[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION]
The plaintiff wife, 32, and the defendant husband, 40, were married on December 14, 1984 in Waterbury, Connecticut. There is one child of the marriage, Jeffrey Michael Feola, born August 30, 1991. Their final separation occurred about February 28, 1993 and the summons and complaint were issued on March 4, 1993.
The plaintiff has been employed full time as a registered nurse for a decade. The court finds the plaintiff's weekly disposable net wage to be $518 less $90 weekly day care or $428. CT Page 4494 In addition, she undertook evening classes for five nights weekly for three years culminating in a B.G.S. degree awarded in May, 1993. The plaintiff was diagnosed as having lupus about four years ago, although she has been in remission. The plaintiff has also been a long distance runner, having competed in the New York City Marathon three times and having run competitively most recently in December, 1993. The plaintiff testified that her running, her weight loss of over 40 pounds since the marriage, her additional schooling, her nose repair surgery, all creating greater independence for her, caused marital discord. Her description of the defendant's objection to her pregnancy coupled with his apparent interest in another woman made the breakdown irreparable, although a reconciliation was attempted after an initial separation from June, 1992 to the end of July, 1992, their differences remained unreconciled.
The defendant, who enjoys excellent health, is a musician, has had his own band and a musical repair business. At the time of the marriage the defendant had moved his repair business to the Zinno Music Store. In 1986 or 1987 the defendant became an employee of Zinno's. After changing jobs and subsequently having become unemployed, the defendant collected $7,488 unemployment benefits in 1992, (Plaintiff's Exhibit I). Presently the defendant is again employed by Zinno's receiving $350 weekly plus commissions. The court finds his weekly net to be $330. The court has no reason to find that the defendant's earning capacity, at present, is any greater than his current earnings. [Hart] v. [Hart], 19 Conn. App. 91. This court does not find that the defendant is avoiding work in his field or that he is not exercising his occupational skills.
It appears to the court that after the first three or four years of marriage, the parties had little in common, did not spend much time together and had widely divergent interests. The plaintiff's testimony attempts to lead the court to the conclusion that the defendant began paying attention to another woman beginning in December, 1990. The parties' child was born approximately nine months later. The alleged "other woman" was not called as a witness nor was any other corroboration offered. The court does conclude that the marriage failed due to many irreconcilable differences. The plaintiff testified, that the defendant didn't like the plaintiff's growing independence.
The parties purchased their first home on June 8, 1984 (Plaintiff's Exhibit K) for $57,900 utilizing a gift of $10,000 CT Page 4495 received from the defendant's mother as the down payment. The parties' present home was purchased on December 28, 1989 for $195,000, a mortgage of $140,000 with the balance in cash from the sale of the first home, (Plaintiff's Exhibits L and M).
The defendant's mother conveyed her home to the defendant in October, 1990, (Plaintiff's Exhibit N). The defendant sold the parcel in June, 1992 for $141,000, (Plaintiff's Exhibit P) receiving net proceeds of $93,188 after paying both related and unrelated expenses, (Plaintiff's Exhibit Q). The funds were deposited into a joint account maintained at First Federal. Part of the proceeds was spent on autos and a vacation. The defendant then opened a stock brokerage account with Quick 
Reilly (Plaintiff's Exhibit T) which now holds $51,000 in cash.
The home was listed for sale in March, 1993 by the plaintiff for $197,000. An offer for $168,500 was received in December, 1993. The defendant elected not to proceed with the sale. The plaintiff wishes to sell the home.
Having reviewed the evidence in light of the statutory criteria and having evaluated the credibility of the witnesses, the court enters the following judgment.
1. A decree is entered on the complaint dissolving the parties' marriage on the ground of irretrievable breakdown. The cross complaint is dismissed as moot.
2. The parties shall have joint legal custody of their minor child. Physical custody and residence shall be with the plaintiff. The defendant is awarded reasonable visitation rights. They presently have had no problems with visitation which has included overnights etc. The parenting education course is therefore found unnecessary and the parties are excused from same.
3. The defendant shall pay child support of $88 based on the parties' combined net income of $758 of which 43.5% is the defendant's share. A wage withholding is ordered pursuant to applicable statute.
4. The plaintiff shall continue to carry the child on her medical and dental insurance as made available through her employment. Any uninsured bill balances not so covered shall be paid 50/50 by the parties. CT Page 4496
5. The defendant shall continue to maintain the $100,000 life insurance policy insuring his life naming the minor child as primary beneficiary until he attains majority. The defendant shall produce proof of coverage and proof of payment of premiums for the plaintiff's inspection so lapse of coverage can be prevented.
6. The defendant shall pay One ($1.00) Dollar per year periodic alimony to the plaintiff until her remarriage or death.[1]
7. The real estate known as 18 Hawkins Road, South Britain is ordered sold. It shall be placed on the market immediately. If the parties cannot agree on a broker, the asking price or any other detail necessary to carry out the order, either party may move for articulation. Upon sale, the parties shall divide the net proceeds equally.
8. The defendant shall be entitled to own and remove from the family home his mother's furniture, his grandfather's radio, his father's butcher block, the opera posters, his collection of autographs, any tools of the trade of instrument repair and a decoy. All remaining tangible personal property remaining on the said premises is the plaintiff's sole property.
9. The defendant shall retain his motor vehicles. The plaintiff is awarded $14,000 in lieu of a car.
10. The parties shall retain their respective bank accounts.
11. The parties shall be solely responsible for their respective liabilities as listed on the financial affidavits.
12. The defendant is ordered to pay the plaintiff $10,000 as an allowance to prosecute which will help her satisfy her litigation expense.
13. The defendant shall retain the remaining balance of his Quick Reilly account after disbursing the payments totaling $24,000 as above ordered.
Counsel for the plaintiff is directed to prepare the judgment file. CT Page 4497
HARRIGAN, J.