[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife brought this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by complaint returnable to this court July 25, 1995. She also sought custody and support of the parties' minor children, alimony, and other relief, as on file. The defendant husband filed no answer or cross complaint; the defendant was represented by counsel until approximately one month before this hearing when counsel was permitted to withdraw; the defendant appeared pro se at trial.
At the hearing, both parties and a family services officer, Walker, testified. A number of documentary materials were introduced into evidence. The plaintiff submitted written proposed orders, a financial affidavit, and a child support CT Page 1158 guidelines worksheet. The defendant submitted an unsworn financial affidavit.
The parties waived oral argument and the filing of briefs. At the conclusion of the evidence, the court ordered that all pendente lite orders continue in effect until the court's memorandum of decision was filed; the court entered certain other orders as on file.
From the evidence, I find as follows.
The parties were married at Pompano Beach, Florida, on July 24, 1982. The wife has resided in this state for more than one year continuously before the filing of the complaint. There are three minor children, issue of the marriage, whose names and dates of birth are: Travis, February 23, 1983; Ryan, November 1, 1988, and Jesse, June 19, 1990. No other minor children were born to the wife since the date of the marriage.
All statutory stays have expired. Neither party or the children are recipients of public assistance, and the court has jurisdiction.
The wife is 37 years old, a high school graduate and in good health. She works as a cook in the Colchester school system and earns $137 per week gross, $98 per week net. She also earns an additional $17 per week net cleaning houses, for a total net income of $115 per week. She has begun a computer training course and wishes to obtain a college degree in business management.
The husband is 42 years old, has a high school diploma with some college courses and appears in good physical health. He is presently unemployed and receives $365 per week net compensation. He has worked for about ten years in the cable television business until the summer of 1995, when his employment was terminated. At that time, he was earning $1,013[1] per week gross, $741 per week net.
The wife claims he voluntarily left his employment; the husband concedes that he resigned, but claims that he had no choice, as he would have been fired without severance pay if he refused to resign. On this issue, I find the husband's testimony credible. CT Page 1159
The wife further claims that the husband has avoided obtaining employment. Although the defendant has provided the court with evidence that he has sent resumes to prospective employers, I find from the evidence that his efforts at employment have been less than diligent, and that he has rejected job offers. Thus, I find that he is not fully exploiting his earning capacity by avoiding suitable employment.
It is well settled that a court under appropriate circumstances may base financial awards on the demonstrated earning capacity rather than the actual earned income of the parties. See Hart v. Hart, 19 Conn. App. 91; cert. denied,212 Conn. 813 (1989). "It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has . . . avoided obtaining employment in his field." Id., 95.
It is unnecessary to recite in detail the evidence with respect to the cause of the marital breakdown. Suffice it to say that the defendant's drinking was a major factor in the destruction of the parties' marriage. The couple separated in late 1994 when the defendant moved out of the family home. He now resides with his girlfriend and her four children. The marriage is, and has been, broken down irretrievably, and a greater share of the responsibility for its destruction must be borne by the defendant.
The parties have acquired assets modest in value. There is a jointly-owned marital dwelling at 106 Corey Road, Groton, Connecticut, valued at $112,000 less mortgage of about $108,600, leaving an equity of $3,400. The wife also reports on her financial affidavit 1988 Oldsmobile and 1981 Toyota motor vehicles respectively valued at $1,500 and $500. She also reports household furnishings and furniture with value unknown, although she testified they could be sold for about $3,000. She reports cash in bank accounts of $20. The defendant reports a 1965 Chevrolet automobile worth $500. He also has a vested balance of $4,122 (valued as of October 2, 1995) in his retirement plan with his former employer. This asset was not reported on his financial affidavit, but the plaintiff was aware of it.
Against these assets, the wife reports a joint credit card liability of $5,052. She also testified she owes her mother about $6,000, and medical bills for the children of $187, CT Page 1160 which two debts are not disclosed on her financial affidavit. The defendant reports $5,723 in liabilities on his financial affidavit; $5,423 for the same credit card liability shown by the wife, and $300 to his girlfriend.
The following additional findings are made.
The defendant received a gross of about $6,000, before taxes, in the summer of 1995, in severance and vacation pay upon his termination from employment. This sum he promptly dissipated despite his unemployment, and the needs of his children.
Both parties successfully completed the parenting education program. General Statutes § 46b-69b. There is an arrearage due the wife from the husband on account of pendente lite orders in the amount of $6,622.95 as of January 5, 1996. In addition, there is due her the sum of $180 on account of the current pendente lite weekly order for a total arrearage found due her of $6,802.95.
The husband has had superior earnings than those of the wife. In 1994, the last full year he worked, he earned a gross annual salary of $52,507, while she earned a gross of slightly under $7,000. Thus, it can be seen that his earning capacity is far greater than hers. He also has greater vocational skills and employability than she has, and on the whole, a better opportunity than she has to acquire capital assets and income in the future.
The child support and arrearage guidelines, based on the parties' current net income of $365 and $115 per week respectively, would presumptively suggest that the defendant's weekly support obligation for the three children should be $163. However, it would be inequitable or inappropriate to apply the guidelines mechanically in this case because of the unexploited earning capacity of the defendant and the best interests of the children, which dictate that they remain in the marital dwelling with their mother. For them to be able to do so, the defendant must pay amounts greater than the guidelines presumptively suggest. Both the defendant's earning capacity and best interests of the children factors constitute deviation criteria under the guidelines. See § 46b-215a-3(b)(1)(B) and (6)(E), Child Support and Arrearage Guidelines (eff. June 1, 1994). CT Page 1161
The court has considered all of the criteria in General Statutes §§ 46b-81, 46b-82 and 46b-84, and the child support and arrearage guidelines in the light of the evidence and findings, in entering of the financial awards hereinafter set forth. I have also considered the taxable implications and consequences of said awards.
I enter no orders respecting a lien on the defendant's claim for damages, if any, for wrongful discharge. In the event he recovers on such cause of action, such recovery may be deemed a substantial change in circumstances, which may entitle the wife to an upward modification of alimony.
Accordingly, judgment shall issue as follows:
(1) A decree shall enter dissolving the marriage on the ground of irretrievable breakdown.
(2) Sole custody of the three minor children is awarded to the mother, subject to reasonable rights of visitation to the father as follows: every other Sunday commencing January 21, 1996, from 9:30 a.m. to 6:30 p. m.; Father's Day from 9:30 to 6:30 p. m.; and one week's summer vacation each year from Saturday 9 a.m. to Sunday at 6:30 p. m. The father shall provide transportation both ways and shall pick up the children from their Sunday School on his Sunday and Father's Day visitation. He shall not consume alcohol during the visitation periods and shall notify mother by telephone, no later than Friday at 5 p. m. that he will exercise his scheduled visitation. If he fails to do so, then visitation shall not occur.
(3) The defendant shall pay, as child support, the sum of $200 per week, to be secured by immediate wage garnishment. The plaintiff is directed to apply for support enforcement services forthwith.
(4) The defendant shall pay, as periodic alimony, the sum of $25 per week as alimony, for a period of seven years. Said alimony shall terminate upon the death of either party, the wife's remarriage or pursuant to the provisions of General Statutes § 46b-86b, and shall be taxable income to the wife, and deductible by the husband.
(5) In 1996 and succeeding years, the husband shall CT Page 1162 have the right to claim the youngest and oldest children as dependency exemptions for income tax purposes, so long as he is substantially in compliance with his child support and alimony obligations as of the end of such calendar year. Substantial compliance shall mean, in the context of this order, that he be no more than two weeks in arrears of the current order. In any calendar year in which the wife earns $10,000 or more in gross income, she shall be able to claim the middle child as an exemption, otherwise the husband shall claim such child, subject to the provisions above. To facilitate the implementation of this order, the parties shall exchange their W-2 forms no later than February 15, 1997, and by February 15, 1997, each year thereafter. The parties shall also provide the necessary forms to each other for the claiming of said exemptions.
(6) The defendant shall promptly notify the plaintiff upon securing employment, and shall by April 15, 1996, and every 90 days thereafter, until he secures employment, of all job applications he has made. This notification shall include the name and address of each prospective employer and the identity and title of the person contacted at such employer by the defendant.
(7) All right, title and interest in and to the marital dwelling known as No. 106 Corey Road, Groton, Connecticut, is hereby assigned to the plaintiff subject to the mortgage thereon, which she shall pay and save the husband harmless; pursuant to General Statutes § 46b-81, the court deems such assignment the proper mode to effectuate the court's order.
(8) There is vested in and assigned to the wife, by Qualified Domestic Relations Order (QDRO), all right, title and interest in and to the husband's Storer Communications retirement savings plan. Said plan was derived from the defendant's former employment at Comcast Cable View of Groton, Inc. One half of the gross value of said plan, as of the date of receipt by the plaintiff, (valued at $4,122 as of October 5, 1995) shall be credited against the arrearage of $6,802.95 previously found. Any remaining arrearage shall be paid at the rate of $10 per week. When the defendant regains full time employment, said payments toward the arrearage remaining, if any, shall be increased to $30 per week. The arrearage balance shall accrue interest at the rate of ten (10%) percent per annum until paid in full. The court shall retain jurisdiction over the QDRO until accomplished. CT Page 1163
(9) When the defendant regains employment, he shall maintain the children as beneficiaries on his job-related health insurance coverage. Each parent shall pay one half of any medical, dental and other health-related expenses incurred for the children not covered or reimbursed by such insurance. An order pursuant to General Statutes § 46b-84d shall enter.
(10) When the defendant regains employment, he shall designate the minor children as equal irrevocable beneficiaries of his job-related life insurance until each child reaches 19. This order is in the nature of child support.
(11) The husband shall take, have and own his 1965 Chevrolet automobile and the tangible personal property now in his possession.
(12) The wife shall own, take and have her 1986 Oldsmobile automobile, her bank accounts and the tangible personal property, and household furnishings and furniture now in her possession, with the exception of the 1981 Toyota, which shall be sold. The net proceeds shall be applied to the joint VISA account. The balance of the VISA bill and the children's medical bills shall be borne equally. The husband shall pay not less than $20 per week toward these obligations until paid.
(13) The husband shall pay the other liabilities shown on his financial affidavit. The wife shall pay the indebtedness to her mother, and her own attorney's fees.
(14) The court shall retain jurisdiction over the allocation of income tax deductions and dependency exemptions between the parties for the tax year 1995. The parties shall notify the court that they have agreed to file jointly and on the disposition of any refund or liability. If they have failed to notify the court of such agreement by March 15, 1996, then the court shall enter orders with respect to said deductions and exemptions. If they have so agreed, the court retains jurisdiction to accept the agreement and enter orders pursuant thereto.
(15) All documents and other instruments necessary or incidental to the effectuation of the court's orders shall be completed and exchanged within 30 days hereof. CT Page 1164
Teller, J.